O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KELVIN LAMONT MITCHELL,<br><br>    Defendant. | Case № 2:24-cr-00135-ODW<br>         2:24-cr-00137-ODW<br><br>**ORDER RE: SUPERVISED RELEASE EVIDENTIARY HEARING** |

## I.  INTRODUCTION

The United States Probation Office ("USPO") alleges that Defendant Kelvin Lamont Mitchell violated the conditions of his supervised release by (1) assaulting an individual with whom he previously had a dating relationship, in violation of California Penal Code section 273.5 ("CPC § 273.5"); and (2) failing to appear for mandatory drug testing. On March 10, 2025, the parties appeared before the Court for an evidentiary hearing on the USPO's Petition. (Hr'g Mins., ECF No. 43; Hr'g Tr., ECF No. 46.[1])  The Court now issues this Order to address Mitchell's evidentiary objections and provide the basis for its ruling, which is that the Government has established both counts by a preponderance of evidence.

---

[1] All CM/ECF citations are to the docket in case No. 2:24-cr-135-ODW.

## II. BACKGROUND

In 2011, Mitchell pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 851. (Ex. 1 ("Judgments" or "Js.") at 1-001, 1-007.[2]) For the § 922(g)(1) and § 846 convictions, he was sentenced to 100 months and 240 months' imprisonment, respectively, followed by three and ten years of supervised release. (*Id.* at 1-002, 1-003, 1-008, 1-009.)

On May 4, 2022, Mitchell began his supervised release. (Ex. 10 ("Order Mod. Cond.") 10-01.) Pursuant to the conditions of supervision, Mitchell "shall not commit another federal, state or local crime," (Js. 1-003, 1-009), and shall submit to "at least two periodic drug tests . . . , not to exceed four tests per month, as directed by the Probation Officer," (Order Mod. Cond. 10-01, 10-03).

On July 11, 2024, the USPO filed a Petition alleging four violations of Mitchell's conditions of supervised release: (1) on July 8, 2024, Mitchell inflicted corporal injury to Kiara Adams in violation of CPC § 273.5; (2) on July 8, 2024, Mitchell had in person contact with Adams in violation of USPO instructions to refrain from contacting her; (3) on eight specified dates, Mitchell failed to report for random drug testing in violation of the requirement to submit to drug testing; and (4) on or before December 18, 2023, and June 17, 2024, Mitchell used cocaine in violation of the requirement to refrain from any unlawful use of controlled substances. (USPO Petition 2–3.) On September 9, 2024, Magistrate Judge Rozella Oliver dismissed the second count, (Mins., ECF No. 18), and on March 10, 2025, the Government dismissed the fourth count, (Hr'g Mins.).

Accordingly, on March 10, 2025, the parties appeared before the Court for an evidentiary hearing on the first and third counts: Count One—that Mitchell violated CPC § 273.5—and Count Three—that Mitchell failed to report for mandatory drug testing. (*Id.*) The Government presented testimony from Los Angeles Police

---

[2] All references to Exhibits are to those admitted at the hearing.

Department Officer Samaria Rhett and USPO Probation Officer Ivan Martinez. (Witness List, ECF No. 45.) The complaining witness, Adams, was subpoenaed but did not appear. Mitchell objects to most of the Government's evidence offered to prove Count One, on due process, hearsay, and authentication grounds. (*See* Def. Objs., ECF Nos. 30, 31.) The Court conditionally admitted the Government's proffered evidence over that continuing objection and now resolves Mitchell's objections and the USPO's charges.

### III.     LEGAL STANDARD

Revocation hearings are "not part of a criminal prosecution and thus the full panoply of rights due a [criminal] defendant' are not due." *Valdivia v. Schwarzenegger*, 599 F.3d 984, 989 (9th Cir. 2010) (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). "The government's burden of proof is accordingly lower: it must prove only a violation of the conditions of release by a preponderance of the evidence." *United States v. Hilger*, 728 F.3d 947, 949–50 (9th Cir. 2013). The evidentiary standards in revocation proceedings are also more permissive. *United States v. Hall*, 419 F.3d 980, 985–86 (9th Cir. 2005). "Neither the Federal Rules of Evidence nor the Sixth Amendment's Confrontation Clause apply to revocation proceedings." *United States v. Lundy*, No. 21-50313, 2023 WL 3095574, at *1 (9th Cir. Apr. 26, 2023) (citing *Hall*, 419 F.3d at 985). "Rather, a due process standard is used to determine whether hearsay evidence admitted during revocation proceedings violates a defendant's rights." *Hall*, 419 F.3d at 985 (citing *Morrissey*, 408 U.S. at 482). The process that is due in a revocation hearing "must be flexible enough to allow the court to consider documentary evidence that may not meet usual evidentiary requirements." *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987).

In this context, the Due Process Clause of the Fifth Amendment guarantees a releasee "the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses."

*Lundy*, 2023 WL 3095574, at *1 (quoting *United States v. Perez*, 526 F.3d 543, 548 (9th Cir. 2008)). This balancing test applies to testimonial and nontestimonial hearsay statements equally. *Valdavia*, 599 F.3d at 990–91. On the releasee's side of the scale, the weight the court gives the right to confrontation depends on "the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." *United States v. Comito*, 177 F.3d 1166, 1171 (9th Cir. 1999). On the Government's side of the scale, the court considers "the difficulty and expense of procuring witnesses" and the "traditional indicia of reliability borne by the evidence." *United States v. Martin*, 984 F.2d 308, 312 (9th Cir. 1993) (internal quotation marks omitted). This includes considering the strength of the Government's reason for not producing the witness in relation to the significance of the releasee's right. *Comito*, 177 F.3d at 1171–72.

## IV.  DISCUSSION

The Government alleges that Mitchell violated the terms of his supervised release by (A) failing to appear for mandatory drug testing and (B) committing a state crime, specifically felony domestic violence in violation of CPC § 273.5.

### A.  Failure to Appear (Count Three)

To establish this charge, the Government relies on the testimony of Officer Martinez, Court orders, and reports from Detection & Treatment Resources, Inc. ("DTR"), a USPO-contracted drug testing provider. (Hr'g Tr. 36:16–19; Ex. 2 ("DTR Reports").) If proven, this charge would be a Grade C violation. U.S.S.G. §§ 7B1.1(a)(3). With Mitchell's criminal history category of IV, this would result in a revocation range of 8 to 14 months. *Id.* § 7B1.4(a).

Pursuant to the conditions of his supervised release, Mitchell was required to submit to periodic drug tests as directed by Officer Martinez. (J. 1-003; Order Mod. Cond. 10-01.) Officer Martinez testified that he received reports from DTR reflecting that Mitchell failed to submit to drug testing as required on at least eight occasions. (Hr'g Tr. 37:16–22.) Officer Martinez met with Mitchell to discuss the no-shows and

Mitchell expressed he either was busy and forgot or slept through testing. (*Id.* at 38:1–7.) Additionally, Officer Martinez reviewed the DTR Reports and testified that they reflect the eight specified occasions on which Mitchell failed to appear for testing. (*Id.* at 37:8–24.)

Mitchell does not challenge Count Three or the Government's evidence on this charge. (*See generally* Def. Objs.; Hr'g Tr.) In any event, although the DTR Reports are hearsay, considering them here does not violate Mitchell's due process rights. While the DTR Reports are important to the finding of a violation, the Court also relies on Mitchell's admission that he forgot or slept through testing, which is not hearsay. Additionally, Mitchell's interest in confronting the DTR employees who prepared the reports is lessened by his lack of challenge to the authenticity or credibility of the DTR Reports, and by the fact that "evidence like the drug treatment center's no-show reports is generally considered reliable." *United States v. Taylor*, 772 F. App'x 461, 462 (9th Cir. 2019) (citing *Hall*, 419 F.3d at 987–88). Therefore, "the Government's interest in presenting [the DTR Reports] through [Mitchell's] probation officer, rather than divert drug testing and treatment employees from their work, sufficiently outweigh[s] [Mitchell's] interest in confrontation." *Id.* at 461. The above due process balancing weighs in favor of admitting the DTR Reports.

This evidence establishes that Mitchell missed at least eight drug testing appointments. Accordingly, the Court concludes that the Government has proven by a preponderance of evidence that Mitchell violated the conditions of his supervised release by failing to report for mandatory drug testing, as alleged in Count Three.

**B.     CPC § 273.5 (Count One)**

To establish a violation of CPC § 273.5(a), the Government must prove by a preponderance of the evidence that Mitchell willfully "inflict[ed] a physical injury on . . . someone with whom he had, or previously had, a[] . . . dating relationship" and that the injury he inflicted "resulted in a traumatic condition." CALJIC No. 840 (2024); Cal. Penal Code § 273.5(a); *accord* CALJIC No. 840 (2025). A "dating

relationship" means "frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement independent of financial considerations." Cal. Penal Code § 243(f)(10). A "'traumatic condition' means a condition of the body, such as a wound, or external or internal injury . . . whether of a minor or serious nature, caused by a physical force." *Id.* § 273.5(d). If proven, this charge would be a Grade A violation. U.S.S.G. § 7B1.1(a)(1). With Mitchell's criminal history category of IV, this would result in a revocation range of 51 to 63 months, limited by a statutory maximum term of imprisonment of 60 months as to this charge. *Id.* § 7B1.4.

### 1. *Hearsay Evidence & Due Process Balancing*

To prove this charge, the Government primarily relies on Adams's 911 call reporting the assault, (Ex. 8 ("911 Call")), Officer Rhett's Body Worn Camera ("BWC") video interviewing Adams shortly after the 911 Call, (Ex. 9 ("BWC")), Officer Rhett's testimony, and Officer Martinez's testimony.[3] Adams's statements on the 911 Call and BWC are hearsay. Fed. R. Evid. 801(c).

Unsworn allegations are generally the least reliable form of hearsay, giving rise to a high interest in confrontation. *Comito*, 177 F.3d at 1171. However, hearsay that is subject to an exception bears greater indicia of reliability than unsworn statements and gives rise to a lesser interest in confrontation. *Id.*; Fed. R. Evid. 803.

The Court finds that some, but not all, of Adams's statements on the 911 Call qualify as excited utterances, a hearsay exception. *See* Fed. R. Evid. 803(2). Specifically, within minutes of the assault, while still sniffling and stuttering, Adams states "I just had a man attack me," he was "an old fling," someone she had been "dating" or "seeing," he had been "stalking" her, he was going to come back, and his name is "Kelvin Lamont Mitchell." (911 Call 0:30–1:25); Fed. R. Evid 803(2) (defining excited utterance as a "statement relating to a startling event or condition,

---

[3] The Government also offers video from a security camera in the apartment building lobby where the assault occurred. (Ex. 5.) The Government failed to authenticate this video. Accordingly, the Court sustains Mitchell's authentication objection and does not consider Exhibit 5.

made while the declarant was under the stress of excitement that it caused"). Additionally, Adams's statement that "[t]he inside of my mouth is cut" qualifies as a then-existing condition. (911 Call 3:10); Fed. R. Evid. 803(3) (defining then-existing condition as a "statement of the declarant's then-existing . . . physical condition (such as . . . pain[] or bodily health"). The Government sufficiently authenticated the 911 Call audio. (Ex. 8B ("911 Call Decl. FRE 902(11)")); Fed. R. Evid. 902(11).

The BWC corroborates Adams's persisting agitated state. When Officer Rhett arrived on scene approximately twenty minutes later, Adams's eyes were watery and she was still speaking and breathing fast. (*See* BWC 2:00–3:00.) Officer Rhett testified that she perceived Adams at that time as "very worried, very in fear," and "excited." (Hr'g Tr. 21:6–9.) In this state, Adams told Officer Rhett that "he beat me up in the hallway," "he's a stalker, he's gonna follow me to work and he's gonna do it again," "he hit me in my face, he knocked me around in my face, just hitting me all in my face." (BWC 2:30–2:47.) The Court finds that these statements on the BWC qualify as excited utterances. Additionally, Adams's statements that "a chunk of the inside of my mouth is gone," "my ears are still ringing right now," and "I got red marks" qualify as then-existing physical conditions. (BWC 4:42, 8:56, 11:31.) The Government sufficiently authenticated the BWC video. (Hr'g Tr. 25:9–26:6; Ex. 9C ("BWC Decl. FRE 902(11)")); Fed. R. Evid. 902(11).

The above hearsay evidence is important to the Court's ultimate finding that Mitchell inflicted physical injury on Adams. However, as the statements on which the Court relies qualify as hearsay exceptions, they thus bear greater indicia of reliability. Additionally, Adams consistently reported that it was Mitchell who attacked her; first to the 911 operator, then to Officer Rhett, and thereafter to Officer Martinez. (911 Call 1:25; BWC 3:30; Hr'g Tr. 43:5–24 (Martinez: "Adams sent me photographic and video evidence of an incident [in July 2024] involving--she reported it was involving herself and Mr. Mitchell."; "[S]he took the photo as the alleged suspect, Mr. Mitchell in this case, was fleeing the scene after having assaulted her.").)

She also provided accurate information about Mitchell, including his birthdate and general physical appearance. The consistency of her accounts and accuracy of information provided contributes to the statements' reliability. *See Lundy*, 2023 WL 3095574, at *1 (finding victim's hearsay statements more reliable where victim's account was consistent, and she provided accurate information about defendant to corroborate her identification of him as her assailant). Consequently, Mitchell's high interest in confronting Adams is diminished. *Id.* (finding releasee's interest in confrontation "significantly diminished by the reliability of the victim's hearsay statements"); *Walker v. Tilton*, No. 1:07-cv-1256-WWS, 2009 WL 1155663, at *5 (E.D. Cal. Apr. 29, 2009) (finding parolee's "not insubstantial" interest in confrontation "somewhat diminished" by the hearsay statements' reliability).

Against Mitchell's interest, the Court considers the Government's showing of good cause for not procuring Adams's live testimony. *Comito*, 177 F.3d at 1170; *Hall*, 419 F.3d at 988.

Officer Martinez testified that Adams was subpoenaed to testify at the evidentiary hearing. (Hr'g Tr. 45:7–21.) In November 2024, Officer Martinez spoke with Adams about testifying, and she expressed to him that she would not comply with the subpoena because she was, in Officer Martinez's words, "fearful, in fear for her safety and her life, . . . afraid of Mr. Mitchell." (*Id.* at 45:22–46:3.) Since then, Officer Martinez has attempted to reach her several times via telephone and text message, but Adams did not respond. (*Id.* at 45:15–18.) Mitchell's counsel disputes that Adams is afraid, (*Id.* at 9:20–23), and submits a declaration stating that, when he spoke with Adams, "[s]he did not indicate in any way that she was fearful of Mr. Mitchell," (Decl. John Neil McNicholas ISO Def. Objs. ¶ 2, ECF No. 30). This declaration establishes only that Adams did not demonstrate her fear to McNicholas, a representative of Mitchell; it does not undermine Officer Martinez's affirmative testimony that Adams expressed fear of Mitchell at other times.

1    The Court finds the Government's evidence in this case sufficient to establish good cause. *See Lundy*, 2023 WL 3095574, at *1 (affirming good cause finding where Government offered evidence that witness had been subpoenaed and could not be located); *United States v. Martin*, 382 F.3d 840, 846 (8th Cir. 2004) (affirming good cause finding where Government offered evidence that witness refused to testify out of fear of retaliation) (cited approvingly by *Hall*, 419 F.3d at 988); *cf. Comito*, 177 F.3d at 1172 (finding Government failed to show any cause for not producing witness, where Government offered no evidence or explanation, and releasee's counsel represented that witness visited releasee in jail almost daily); *United States v. Cai*, 787 F. App'x 916, 917 (9th Cir. 2019) (finding Government failed to show it made any effort to procure the witnesses or that witnesses were frightened and unwilling to testify).

Applying the due process balancing test to Adams's hearsay-excepted statements above, the Court concludes the Government's showing of good cause is sufficient to outweigh Mitchell's interest in confronting Adams. *See Lundy*, 2023 WL 3095574, at *1 ("[T]he government's good cause for failing to produce the victim as a witness outweighs Lundy's interest in confronting her, given the reliability of her hearsay statements."); *United States v. Chaidez*, No. 21-cr-00377-JSW-1, 2025 WL 458834, at *3 (N.D. Cal. Feb. 11, 2025) (concluding the government's showing of good cause was sufficient to outweigh defendant's interest in confronting the complaining witness where the primary evidence used to prove the CPC § 273.5 charge were the witness's excited utterances on a 911 call and BWC footage). Accordingly, the Court overrules Mitchell's objections to, and admits, those statements.

2.   *Violation of CPC § 273.5(a)*

Turning to the elements of CPC § 273.5(a), the Government established Mitchell's dating relationship with Adams through Officer Martinez's testimony, that Mitchell himself "described it as an intimate or dating type of relationship." (Hr'g

Tr. 39:22–25.) The relationship is also corroborated by Adams's hearsay-excepted statements in the 911 Call that she had previously been "dating" or "seeing" Mitchell, and Adams's hearsay statements in the BWC that she and Mitchell had previously been "intimate" and dated for several months. (BWC 5:20–5:34.)

The Government also established that Mitchell inflicted physical injury on Adams, resulting in a traumatic condition, through Adams's 911 Call and BWC hearsay-excepted statements—that Mitchell attacked her and hit her in her face, causing red marks, a laceration, and ringing in her ears—and through Officer Rhett's testimony—that she observed bruising to Adams's face and a laceration to Adams's inner lip. *See Hall*, 419 F.3d at 986 ("Bruising is a 'traumatic condition' for purposes of the statute."). This is corroborated by Adams's consistency in reporting that Mitchell attacked her and the accuracy of identifying details she provided. Further, Officer Martinez identified Mitchell at the hearing. (Hr'g Tr. 34:4–14.)

Based on the above, the Court concludes that the Government proved by a preponderance of the evidence that Mitchell violated his conditions of supervised release by violating CPC § 273.5, as alleged in Count One.

## V. CONCLUSION

For the reasons discussed above, the Court finds that Mitchell violated the terms of his supervised release by failing to appear for multiple drug tests and violating California Penal Code section 273.5(a). Sentencing is set for **June 9, 2025, at 11:30 a.m.** Sentencing position papers shall be filed no later than fourteen days before sentencing.

**IT IS SO ORDERED.**

April 22, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**